ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v.
P. E. MILLER ET AL.

Decided November 9, 1901.

**1.—Joinder of Parties and Causes of Action—Claim for Property Destroyed.**

Where the owner of cotton and an insurance company joined in an action against a railroad company for the value of the cotton, which had been destroyed by fire while in defendant's possession, the insurance company claiming an interest in the amount recoverable under an assignment by the owner of his claim to the extent of the insurance paid, there was no misjoiner of causes of action or of parties.

**2.—Railroad Company—Fire—Spark-Arresters—Charge.**

In an action against a railroad company for the value of cotton destroyed by fire from its engines, a charge to the effect that defendant was bound to use the "best approved appliances" for preventing the escape of sparks from its engines was not critically correct; yet the giving of such charge was harmless error where defendant proved that its engine was equipped with the best appliances in use, and plaintiff made no attempt to show that there were other appliances having the approval of scientific authority.

**3.—Same—Prima Facie Case—Charge.**

Plaintiff having proved that the fire was caused by sparks from defendant's engine, and defendant having shown that its engine was equipped with a proper

spark-arrester, but without proving the condition of the arrester at the time of the fire, or that the engine was properly handled, the prima facie case of plaintiff was unrebutted, and there was no reversible error in the failure of the court to give an instruction to the effect that defendant was bound to use only ordinary care in keeping its arresters in good order and was not bound absolutely to maintain them in such condition.

**4.—Same—Negligence—Selection of Competent Servants.**

A railway company is liable for the negligence of its servants operating its engines, even though it has exercised ordinary care in appointing them.

**5.—Same—Burden of Proof.**

Where plaintiff's evidence showed that the fire which destroyed the cotton was from sparks escaping from defendant's engine, a prima facie case was made, and the burden was shifted to the defendant to show that its engine was properly equipped and operated; and hence a charge that the burden was on plaintiff to show that the cotton was destroyed by fire set from the engine, and originating through defendant's negligence, although a correct proposition, would have been misleading as to the burden of proof, and was therefore properly refused.

**6.—Same—Building House Near Railroad Track—Negligence.**

The owner of a lot is not guilty of negligence in building a house thereon and storing goods in it, although it be in close proximity to a railroad track where engines are constantly passing.

**7.—Same—Evidence—Inspection of Engine.**

Testimony of a foreman in charge of the company's inspectors of engines that the record of inspections kept by him showed that the spark-arrester of the particular engine was in good condition was properly excluded where it was shown that he made the entry from a report handed him by a boiler maker, and it did not appear where the latter got it, or who made the inspection, or that the foreman ever saw the engine, and the non-production of the better evidence was not accounted for.

Appeal from Henderson.  Tried below before Hon. Jno. Young Gooch.

*Frost, Neblett & Blanding,* for appellant.

*Richardson & Watkins,* for appellees.

TEMPLETON, Associate Justice.—P. E. Miller owned a house which was situated on a lot adjacent to the cotton platform of appellant at its depot at Athens.  On November 7, 1898, sparks escaped from one of appellant's engines and set fire to cotton on the platform, and the fire spread to and consumed Miller's house and a stock of goods belonging to him, and contained in the house.  The greater part of the property destroyed was insured by the Home Insurance Company, and on January 30, 1899, the insurance company adjusted the loss with Miller, paying him on account thereof the sum of $705.28; and Miller assigned to the insurance company his claim against appellant growing out of the destruction of his property through the alleged negligence of appellant, to the extent of the sum so paid to him by the insurance company.  On August 23, 1899, Miller sued appellant for the damages occasioned by the fire, placing the amount of his damages at the value of the property destroyed.  On May 17, 1900, the insurance company intervened in the suit, and asserted an interest in the damages which might be recovered, to the extent of the sum it had paid to Miller.  On

September 6, 1900, Miller and the insurance company joined in an amended petition, and together sought judgment against appellant for the value of the destroyed property; the interest of the insurance company in the alleged cause of action being stated as claimed by it in its plea of intervention. They obtained judgment for $2198, of which sum $705.28 was awarded to the insurance company, and the remainder to Miller.

The demurrer of appellant to the effect that the petition showed a misjoinder of parties plaintiff and causes of action was properly overruled. A single cause of action was sued on, namely, that arising out of the destruction by fire, through the alleged negligence of appellant, of the property in question. An interest in the entire cause of action appears to have been assigned to the insurance company, and it was entitled to sue thereon. Houston Direct Nav. Co. v. Insurance Co., 31 S. W. Rep., 560. Surely, appellant can not complain because Miller and the insurance company, owning, as they did, the entire cause of action, joined in a suit thereon, and did not subject it to the unnecessary expense and trouble of double litigation. The insurance company undoubtedly had the right to make itself a party to the suit and set up its interest in the subject matter thereof.

Appellant complains of a paragraph of the court's charge which reads thus: "If you believe from the evidence that at the time of the fire the engines were properly constructed and provided with the best approved appliances for preventing the escape of fire, and that the same were, in regard to preventing the escape of fire, all in good condition and repair, and that the engines were handled and operated with ordinary care as regarded the escape of fire therefrom, then you will find for defendant." The complaint is that the charge incorrectly states the duty required of appellant in respect to the matters presented in the charge, its true duty being, according to appellant's contention, to use ordinary care to select and keep in repair the best approved known appliances for preventing the escape of fire.

In Railway v. Bartlett, 81 Texas, 42, in discussing a charge containing the expression "most approved spark-arresters," the Supreme Court said: "We think that such a charge is less exacting than one that requires evidence of the use of the 'best engines and best appliances,' because the last named qualifications are more a matter of speculation and opinion than the former, and may be much more difficult of ascertainment and proof. The charge would have been more satisfactory if it had limited the requirement to the use of the 'most approved' fire-arresters to those that were shown to be such by their use, or if it had read, the 'most approved in use.'" The expression used in the charge there considered was not otherwise condemned or approved, and the case appears to have been decided on another ground. In 2 Wood, Railway Law, 1343, we find the duty of the railway company in this relation announced in these terms: "A railway company, being authorized to use steam in the operation of its trains, is only bound to use ordinary

care against fires, and is not liable for a purely accidental fire, caused by fire escaping from its engines. But it is bound to employ the best appliances *in known use,* in the form of fire-boxes, spark-protectors, etc., and any failure in this respect is a want of ordinary care and prudence. In most of the States, if the spark-protectors, etc., are shown to be of the *most approved pattern in use,* and in proper repair, it is a full defense to an action for fires set by the company, *unless some negligence in other respects is shown.* This rule does not require the company to use any appliances which have not been tested, although approved by the highest scientific authority, but requires only the use of *those which have been tested and put into general use."* Under these authorities, the expression "best approved appliances," occurring in the charge given in this case, is not critically correct, but it does not follow that its use was materially erroneous. Appellant proved by uncontroverted testimony that its engine was equipped with the best appliances in use, and there was no attempt on the part of appellees to show that there were other appliances which had the approval of scientific authority. Such being the evidence on this issue, the jury could not have interpreted the expression "best approved appliances" as requiring the use of some experimental apparatus which was not generally known or had not come into general use. The failure of the trial court to employ the technically exact term in defining appellant's duty with reference to such appliances could not have injured appellant and is not reversible error.

The contention of appellant that it was bound to use only ordinary care to keep its spark-arresters in good repair, and was not bound absolutely to maintain them in such condition, is sound, but it does not seem that any injury could have resulted to it from the failure of the court to so instruct the jury. In Railway v. Timmerman, 61 Texas, 663, it was held that where plaintiff showed that his property had been set on fire by sparks escaping from the company's engine, the burden was on the company to show that there was in fact no negligence on its part in causing the fire. This could be done by proof that the engine was equipped with the most approved arresters in general use, and that the same were in good repair and that the engine was properly handled. In this case the appellees proved that the fire was caused by sparks escaping from one of appellant's engines, and appellant proved that the engine was equipped with a proper arrester but did not offer any legal testimony as to the condition of the arrester at the time of the fire, or to show that the engine was carefully handled. Having failed in this respect, the prima facie case of appellees was unrebutted and the error in the charge was immaterial.

Appellant also complains of the refusal of a special charge on this issue. We find no error in this action of the court. It is not a correct statement of the law, as announced in the requested charge, that appellant was bound only to use ordinary care in selecting competent servants to operate the engine; it was liable for the negligence of such

operatives, even though it had exercised due care in appointing them. Again, the requested charge was calculated to confuse the jury on the issue as to the burden of proof. It was stated in the special charge that the burden of proof was on plaintiffs to show that the property was fired by fire which originated from the company's engine, and that such fire originated through its negligence. Strictly speaking, this proposition is correct, but upon the plaintiffs proving that the fire escaped from the company's engine and set fire to the property, a prima facie case was made, and the burden was shifted to the company to show that its engine was properly constructed and operated. Timmerman's case, supra. In view of the evidence in this case, which has been stated above, the charge, if it had been given, was calculated to mislead the jury as to where the burden of proof rested.

It was not negligence on Miller's part to build the house on his own lot, and put his goods in the house, although the same was in close proximity to appellant's road, where engines were constantly passing. In determining whether or not it was prudent for him to do so, he had a right to assume, as stated in the court's charge, that the company would exercise ordinary care to avoid firing his property; and, if it was fired through the negligence of the company, he was entitled to recover. Clark v. Dyer, 81 Texas, 343; Rutherford v. Railway, 61 S. W. Rep., 422.

Appellant offered to prove by R. A. Miller, its foreman at Waco, who had charge of the inspectors of engines on the Athens division, that the record of inspections in his office showed that the spark-arrester of the engine in question was in good condition at the time of the fire. The record itself was not produced. It was shown that the entry was made by the witness Miller from a report handed him by a boilermaker. It was not shown where the latter got it, or who made the inspection, or that the foreman Miller ever saw the engine. No reason for the nonproduction of better evidence appears. The testimony was properly excluded.

There is no necessity for discussing the other assignments, which are without merit. The judgment is affirmed.

*Affirmed.*

Writ of error refused.